IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ATLANTIC SPECIALTY INSURANCE
CO.,

      Plaintiff,

v().                                                            No. Civ. 13-945 JCH-SMV

DEANS, INC.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

The following motions are before the Court: (1) Plaintiff Atlantic Specialty Insurance Company's ("Plaintiff" or "Atlantic") "Motions in Limine" (ECF No. 74), seeking pretrial admissibility rulings on approximately nine categories of evidence; (2) Defendant Deans, Inc.'s ("Defendant" or "Deans") "Motion in Limine to Exclude any Evidence regarding NFPA 780 or other Alleged Light[n]ing Protection System Standards or Codes" (ECF No. 76); and (3) Plaintiff's Motion for Leave to File a Supplemental Deposition Designation (ECF No. 86), as to expert Jeffery Sellon. The Court will deny Deans' motion in limine, will grant in part and deny in part Atlantic's motions in limine, and will grant Atlantic's motion for leave to file a supplemental deposition designation as to Mr. Sellon.

      **I.**      **Deans' Motion in Limine regarding NFPA 780**

The parties dispute the relevance and admissibility of the National Fire Protection Association ("NFPA")'s Standard for the Installation of Lightning Protection Systems ("NFPA 780"). Plaintiff submitted evidence that NFPA 780 is the consensus industry standard of care for

the design and installation of the lightning protection system ("LPS") that Deans agreed to install for Judah Oil at the Cedar Lake facility.

Deans seeks to exclude NFPA 780, arguing it is irrelevant. First, Deans contends that the sole issue in the case is whether the parties agreed for Deans to install an LPS over the entire 24-tank facility built, or just the easternmost 18 tanks. Deans argues that the performance of the LPS is not at issue, and thus LPS standards and codes are not relevant. In making this argument, Deans asserts that Atlantic cannot bring a negligence claim under New Mexico Law because its sole duty arises from a contract. *See* Mem. of Law Regarding Pl.'s Negligence Claims 3, ECF No. 88. Deans argues that Plaintiff cannot assert a tort claim and requests the jury not be charged on negligence and that all evidence relating solely to Atlantic's negligence claims be excluded from trial. *Id.* at 4. Because Deans has essentially moved for summary judgment as to Plaintiff's negligence claim, the decision of which affects the motions in limine, the Court will first turn to the viability of Plaintiff's negligence claim.

**A. The Court will not dismiss Plaintiff's negligence claim pretrial**

To recover damages on a claim for negligence, a plaintiff must prove the existence of a duty from the defendant to the plaintiff, breach of that duty, and the breach was a proximate cause and cause in fact of the plaintiff's damages. *Lessard v. Coronado Paint & Decorating Center, Inc.*, 2007-NMCA-122, ¶ 27, 142 N.M. 583. "A duty is a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class or persons[.]" *Cottonwood Enterprises v. McAlpin*, 1991-NMSC-044, ¶ 10, 111 N.M. 793.  (quoting *Baxter v. Noce*, 107 N.M. 48, 51, 752 P.2d 240, 243 (1988)). "Existence of a duty is a question of policy to

be determined with reference to legal precedent, statutes, and other principles comprising the law." *Id.*

Deans argues that the economic loss rule precludes recovery in tort for purely economic losses when the claims are based on a breach of a contractual duty. Atlantic asserts that the economic loss rule does not apply in this case because NFPA 780, adopted by the State of New Mexico through the New Mexico Electrical Code, imposes an independent duty of care separate from the contract between the parties.

Deans relies on *Utah Int'l Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, 108 N.M. 539, 542, 775 P.2d 741, 744 (Ct. App. 1989), which adopted the economic loss rule. The New Mexico Court of Appeals' ruling in that case was narrowly applied to products liability cases: "in commercial transactions, when there is no great disparity in bargaining power of the parties, ... economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* The New Mexico Supreme Court later endorsed the Court of Appeal's adoption of the economic loss rule and preserving the line between contract and tort law: "As a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate remedy." *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶ 28, 119 N.M. 542. New Mexico decisions have repeatedly emphasized the distinction between tort and contract law – breach of contract is a failure to perform a duty arising or imposed by agreement while a tort is a violation of a duty imposed by law. *See Kreischer v. Armijo*, 1994-NMCA-118, ¶ 6, 118 N.M. 671. *See also Cottonwood Enterprises v. McAlpin*, 1991-NMSC-044, ¶ 11 (stating "the tort of negligence must be based upon a duty other than one imposed by the contract," and citing *Stern v. Farah Bros.*, 17 N.M.

3

516, 529 (1913), for proposition that "where there is no legal duty except that arising from contract, there can be no election between an action on contract and one in tort since in such case there is no cause of action in tort").

Nevertheless, "tort duties that exist independent of a contract sharply limit the economic loss rule's application to service contracts." *Farmers Alliance Mut. Ins. Co. v. Naylor*, 480 F.Supp.2d 1287, 1289 (D.N.M. 2007). The Honorable William P. Lynch persuasively explained in *Naylor* that this limitation arises from the unique and unequal bargaining relationship that often exists between clients and their service providers, who are generally licensed professionals who owe their customers a duty of care apart from the underlying contractual agreement. *See id.* at 1289-90. After examining the specialized nature of the services provided by the defendant fire investigator, Judge Lynch concluded that his status as a fire investigator qualified him as a professional subject to a professional standard of care independent of his contract with his client, and therefore, under New Mexico law, the economic loss rule did not bar the plaintiff's tort claim against him. *See id.* at 1288, 1290-93.

The record here contains evidence that designing an LPS requires considerable training and knowledge outside the expertise of Mr. Campanella and Judah Oil and that the work of designing an LPS is subject to professional care and industry standards, including NFPA 780. Plaintiff has also submitted evidence indicating that New Mexico's Construction Industries Division of the Regulation and Licensing Department promulgated a regulation requiring that the installation of an LPS under certain circumstances be in accordance with NFPA 780. *See* Pl.'s Tr. Br., Ex. 1, ECF No. 98. The evidence presented to the Court, construed in Plaintiff's favor, indicates that Deans had an independent duty to design and install a code-complaint LPS. *See* NMAC § 14.10.4(G)(8) (2011) ("**Section 250.106. Lightning protection systems.** See this

4

section of the NED and add: Where a lightning protection system is installed, the bonding of the gas piping system shall be in accordance with NFPA 780, standard for installation of lightning protection systems."). Deans has therefore not persuaded this Court that it should broaden the application of the economic loss rule to the facts of this case.

Furthermore, while cast as a motion in limine, Deans' requested relief in its motion and subsequent memorandum of law is essentially pretrial dismissal of Plaintiff's negligence cause of action. Notably, Deans' pretrial dispositive motion deadline passed long ago in March 2015. The Court's review of Deans' motion for summary judgment revealed no argument therein on the economic loss rule.

For all the foregoing reasons, the Court will not dismiss Plaintiff's negligence claim. *Cf. Summit Elec. Supply Co., Inc. v. International Business Machines Corp.*, No. 1:07-cv-0431 MCA/DJS, 2009 WL 9087259, *19-21 (D.N.M. Sept. 30, 2009) (unpublished) (declining to extend economic loss rule to preclude claims for fraud, negligent misrepresentation, and violation of the Unfair Practices Act in case involving contract for installation of software and corresponding services, both of which plaintiff alleged were inadequate and substandard); *Adobe Masters, Inc. v. Downey*, 1994-NMSC-101, ¶ 3, 118 N.M. 547 ("When professional services arising from contract are substandard, a plaintiff may bring a cause of action for malpractice based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill."); *Cottonwood*, 1991-NMSC-044, ¶¶ 9-14 (acknowledging that most duties between parties to a title insurance contract stem from the contract itself but reversing dismissal of plaintiff's negligence claim because it arose from a duty other than one imposed by the contract, specifically the duty based on New Mexico statute on underwriting standards for title

insurance and law regarding fiduciary relationships between title companies when acting as title insurance agents).

### B. Admissibility of NFPA 780

Because the Court declines to dismiss Plaintiff's negligence claim before trial, evidence of NFPA 780 will be relevant to the issues of duty and breach of duty. In addition, NFPA 780 is relevant to Plaintiff's breach of contract claim where a question for the jury is what the parties understood installation of an LPS for the Cedar Lake facility to mean and whether Deans failed to perform as to the agreed-upon term. New Mexico Uniform Jury Instruction ("NM UJI") 13-829, the "Workmanlike manner" instruction applicable in a breach of contract case, "should be given when a question of fact arises as to whether a person failed to exercise the judgment or to produce the product which could be expected from any person working in that field." NM UJI 13-829, Directions for Use. This "Workmanlike manner" instruction states: "Where a person contracts to perform work of a particular skill, [he][she] promises to exercise the judgment and to display the quality of workmanship which is standard to that field of work." NM UJI 13-829. When giving NM UJI 13-829, a court may also give NM UJI 13-830, the "Implied warranty to use reasonable skill" instruction, for its "statement of the standard of performance required by contracts to perform services." NM UJI 13-830, Directions for Use. This Implied Warranty instruction provides: "When a person undertakes to practice a trade or to do a kind of work which requires some learning, special training or experience, [he][she] is obligated to exercise that degree of skill which a reasonably prudent person skilled in such work would exercise in the circumstances." NM UJI 13-830. Plaintiff has presented evidence that NFPA 780 is the guiding standard of care for design and installation of an LPS, and thus, it is relevant evidence of Deans'

6

standard of performance implied in the alleged contract. Accordingly, the Court will deny Defendant's motion in limine to exclude evidence regarding NFPA 780.

## II.     Plaintiff's Motion for Leave to File a Supplemental Deposition Designation

Plaintiff learned after the Court's pretrial conference on January 5, 2017, that Defendant would not call one of its experts, Jeffery Sellon, to testify at trial, despite that he has been listed on Defendant's witness list. Plaintiff asserts that Mr. Sellon resides outside the 100-mile radius of the Court, beyond its subpoena power. Plaintiff requests that Mr. Sellon be allowed to testify through deposition testimony.

Deans contends that Plaintiff's request should be denied because Atlantic did not list Mr. Sellon on its own witness list, as it had for other defense witnesses, and his testimony is merely cumulative of that of Plaintiff's expert, Marcus Durham. Deans also argues that Mr. Sellon's testimony as to NFPA 780 is irrelevant.

The Court will allow Plaintiff to file its supplemental deposition designation of Mr. Sellon's testimony. Although Plaintiff should have indicated in its witness list that it might call Mr. Sellon, Deans has not shown any prejudice that may result. Deans has Mr. Sellon on its own witness list and knows the content of Mr. Sellon's testimony. Deans has not demonstrated that the testimony of Mr. Sellon and Mr. Durham is cumulative, and the Court can take up any such specific objections at trial. Finally, the Court has already rejected the argument that testimony on NFPA 780 is irrelevant.

The Court, however, will grant Deans' alternative request for an opportunity to file objections and counter-designations to Plaintiff's proposed designation of Mr. Sellon's deposition testimony. Deans may also file a supplemental response to Plaintiff's motion in limine

to address the arguments pertaining to Mr. Sellon's testimony. Deans must file these requested documents on or before Friday, January 20, 2017.

    **III.    Plaintiff's Motions in Limine**

        **A. Testimony regarding Deans' continuing working relationship with Judah Oil**

Plaintiff proffers that, following the fire at Cedar Lake, Judah Oil used Deans to provide electrical work at other oil field facilities owned by Judah Oil. Plaintiff contends that the jury may impermissibly conclude that Blaise Campanella, the owner of Judah Oil, does not believe that Deans failed to install an adequate LPS, and is irrelevant to the issues in the case. Deans argues that, if Atlantic introduces evidence regarding the grounding of the western battery of tanks, then the fact that Judah Oil continues to hire Deans to perform electrical work, including grounding, is relevant rebuttal evidence. The Court finds that this evidence is not relevant to the issues to be tried as to what Deans did or failed to do at the Cedar Lake facility before the August 19, 2012 fire, and will exclude the evidence under Federal Rules of Evidence 401 and 402.

        **B. Jeffery Sellon's opinion that electrical contractors in southeastern New Mexico do not follow standard of care**

Plaintiff seeks to exclude portions of Mr. Sellon's testimony under Rules 402 and 702 regarding how other contractors in southeastern New Mexico fail to comply with NFPA 780, and thus, that Deans did not have to comply with NFPA 780. Deans argues that the type of LPS installed in the local area is part of the surrounding circumstances and is relevant to the parties' understanding of what the terms of the oral contract were. The Court finds that LPS design practices in the local area are relevant to the intentions of the parties; the surrounding circumstances and customs of the trade; and whether the parties' had a meeting of the minds concerning an LPS that met NFPA 780 and may have covered all 24 tanks, or whether their

understanding based on custom in the local area was an LPS with strands over only 18 tanks. The Court will therefore not exclude these portions of Mr. Sellon's testimony, should Deans offer them at trial.

### C. Evidence that Judah Oil sold the Cedar Lake facility after the fire

Atlantic argues that evidence of the subsequent sale of the Cedar Lake facility is irrelevant to a determination of liability and damages. Deans does not intend to offer Mr. Campanella's testimony that Judah Oil sold the rebuilt Cedar Lake facility following the August 19, 2012 fire, but reserves the right to seek admission depending on what Atlantic introduces to supports its damages claim. The issue appears to be moot, but the Court will reserve ruling on the issue should it become ripe for consideration at trial.

### D. Mr. Sellon's speculation that the fire was caused by something other than lightning

Atlantic argues that Mr. Sellon has not disclosed any opinion that something other than lightning caused the Cedar Lake fire, and any such opinion should not be permitted at trial. Deans asserts that it does not intend to offer any testimony or evidence that something other than lightning striking the western battery caused the fire, and thus, this issue is also moot. Nevertheless, given that the Court is permitting Plaintiff to offer Mr. Sellon's testimony by deposition and is allowing Deans to designate testimony until Friday, the Court will reserve ruling on this issue until trial.

### E. Testimony that truck drivers offloading waste water caused the fire.

Deans does not intend to offer any testimony or evidence that something other than lightning striking the western battery of tanks caused the fire, and thus, this issue too is moot.

9

### F. Testimony regarding Mr. Campanella as someone who frequently changes his mind

Plaintiff contends that testimony concerning how Mr. Campanella worked on other oil field projects with Deans' employees and changed his mind, operated "by the seat of [his] pants," and could be difficult to work with should be excluded as irrelevant and as inadmissible character evidence under Rules 401, 402, and 404. Plaintiff argues the evidence is irrelevant because it pertains to the design and construction of other oil field facilities, will confuse the jurors, and unnecessarily lengthen the trial. Defendant asserts that this evidence is proper "course of dealing" evidence relevant to the understanding of the agreement. The Court agrees with Defendant. This evidence is not sufficiently negative to prejudice the jury, and instead, is relevant to the parties' course of dealing and understanding regarding the ambiguous terms of the oral contract and the parties' intent. *See Tarin's Inc. v. Tinley*, 2000-NMCA-048, ¶ 16, 129 N.M. 185 (quoting *Boyle v. Steiman*, 429 Pa.Super.1, 631 A.2d 1025, 1033 (1993) ("[W]hen construing an oral contract the words constituting the agreement are merely parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under which the parties contracted in light of the objectives to be accomplished. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent.").

### G. Evidence about construction and layout of other oil field facilities owned by Judah Oil

Atlantic seeks to exclude under Federal Rule of Evidence 401, 402, and 403 evidence as to the layout of other salt water disposal facilities owned by Judah Oil: T-Bone, Red Lake, and Green/Geronimo, arguing such evidence is irrelevant, will mislead and confuse the jury, and will

unnecessarily lengthen the trial. Deans contends this evidence is relevant habit evidence and admissible regarding the parties' past course of dealing. The Court will not exclude such evidence pretrial because it is potentially relevant to the parties' course of dealing and the circumstances surrounding the formation of the agreement, which will help the jury determine the parties' understanding of the terms of the oral contract. This ruling does not prevent Atlantic from making proper objections to specific evidence at trial.

Plaintiff also objects to Deans' Exhibits I (Overhead picture of Red Lake facility), K (Overhead picture of Green [Geronimo] SWD facility), and O (Deans work order with staking sheet for Red Lake lightning protection), because Plaintiff contends Deans did not produce these documents in discovery despite Plaintiff's requests. Plaintiff argues it specifically requested such documents in its First Set of Request for Production No. 6 (asking for "all design drawings, calculations, proposals, and/or schematics for the [LPS] systems installed by Deans, Inc. at the Red Lake, T-Bone, and Geronimo salt water disposal facilities"), and No. 12 ("produce all documents relating to original construction of the Red Lake, T-Bone and Geronimo salt water disposal facilities, … but not limited to …*completion photographs*.") (emphasis added). *See* Def.'s Resp. to Pl.'s First Set of Interrog., ECF No. 74-1. Plaintiff argues that it never had an opportunity to question Deans' witnesses about the proposed exhibits and will be prejudiced at trial by their admission.

Deans asserts that the overhead photographs are of the finished facilities showing the layout with two rows of tanks, which is available to anyone on the internet and that the photographs were not responsive to Plaintiff's requests. Deans does not specifically address Exhibit O, other than to generally argue that the documents are equally available to Atlantic,

Atlantic questioned witnesses about the layouts of the other facilities in discovery, and Atlantic will not be prejudiced because the layout is not in dispute.

Exhibits I, K, and O fall within Plaintiff's requests for production, and Deans offers no explanation for their belated production. Because Plaintiff did not have the benefit of these exhibits when deposing Deans' witnesses, the Court will exclude Exhibits I, K, and O at this time. This ruling does not, however, exclude testimony concerning the layout of the Red Lake or Green facilities.

### H. Exhibit F (application Judah Oil submitted to federal government for pre-construction approval of Cedar Lake facility)

Plaintiff argues that Exhibit F portrays a preliminary layout for Cedar Lake that was not used in actual construction, and that Deans did not have the document before construction, and thus, Deans could not have relied on Exhibit F for its work. Plaintiff seeks to exclude Exhibit F as irrelevant and lacking foundation under Rules 401 and 402. Deans contends that Exhibit F is relevant to show the objective Mr. Campanella sought to accomplish, because Exhibit F shows that Judah Oil had a proposed layout in mind for construction of overhead static lines for an LPS for Cedar Lake and that Mr. Campanella changed the layout.

If Deans' employees never saw or knew about Exhibit F before or during construction of the LPS at Cedar Lake, then the Court agrees that Exhibit F is not relevant to the parties' intentions. Exhibit F could potentially become relevant rebuttal evidence, however, and thus the Court will reserve ruling on the admissibility of Exhibit F until trial.

### I. Testimony outside disclosed opinions and reports

Plaintiff contends that the testimony of Mr. Sellon and M. Scott Van Schaardenburg, a civil engineer disclosed to offer testimony about the standard of care of a general contractor, should be confined to the opinions provided in Deans' disclosure and witness reports. Deans asserts that its fact witnesses will testify to matters within their personal knowledge and that Mr. Schaardenburg will testify to matters disclosed in his expert witness disclosure. This issue thus appears to be moot. As for the testimony of Mr. Sellon, given that the Court is allowing Deans to designate testimony until Friday, the Court will reserve ruling on this issue until trial.

**IT IS THEREFORE ORDERED** that

1. Defendant's Motion in Limine to Exclude any Evidence regarding NFPA 780 or other Alleged Light[n]ing Protection System Standards or Codes (**ECF No. 76**) is **DENIED**.

2. Plaintiff's Motion for Leave to File a Supplemental Deposition Designation (**ECF No. 86**) is **GRANTED**. Deans may file objections and counter-designations to Plaintiff's proposed designation of Mr. Sellon's deposition testimony and a supplemental response to Plaintiff's motion in limine to address the arguments pertaining to Mr. Sellon's testimony **on or before Friday, January 20, 2017**.

3. Plaintiff's "Motions in Limine" (**ECF No. 74**) is **granted in part and denied in part** as described herein.

_____
**UNITED STATES DISTRICT JUDGE**